UNITED STATES of America, Appellee,

v.

Gerard T. OUIMETTE,
Defendant, Appellant.

No. 84–1610.

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1984.

Decided Jan. 25, 1985.

William M. Kunstler, New York City, with whom Edward J. Romano, Providence, R.I., and Gombiner & Avenia, New York City were on brief, for defendant, appellant.

John Voorhees, Special Atty., Boston Strike Force, U.S. Dept. of Justice, Boston, Mass., with whom Lincoln C. Almond, U.S. Atty., Edwin J. Gale, Sp. Atty., U.S. Dept. of Justice, Providence, R.I., and Jeremiah T. O'Sullivan, Sp. Atty., U.S. Dept. of Justice, Boston, Mass., were on brief, for appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and MALETZ,[*] Senior Judge.

BOWNES, Circuit Judge.

Defendant, Gerard T. Ouimette, appeals his jury conviction of violating 18 U.S.C. § 922(h) and 922(k). Section 922(h) makes it unlawful for a convicted felon, which defendant was, to receive a firearm which has been shipped or transported in interstate commerce. Section 922(k) makes it unlawful for any person knowingly to receive in interstate commerce any firearm which has had the serial numbers removed, obliterated or altered. The conviction is appealed on two grounds: the exclusion of certain defense testimony; and the failure to sever Count I (§ 922(h)) from Count II (§ 922(k)). Defendant also attacks the sentencing procedure.

## I. THE EXCLUSIONARY RULING

The government's case rested squarely on the testimony of three police officers, Sergeant Steven H. Hall, Patrolman Paul Joseph Kennedy and Patrolman Henry J. Roy. A little after midnight on June 10, 1982, Hall, Kennedy and Roy were driving around Providence, Rhode Island, on a liquor license compliance patrol. The officers wore civilian clothes and the car they were using was not marked as a police cruiser. They were near a bar well-known to them, Sullivan's Cafe, when they heard what they thought was a gun shot. The driver, Roy, pulled the car over to the curb in front of Sullivan's. The proprietor of the cafe, Bruce Comeau, was standing on the sidewalk in front of his establishment. While Hall was talking to Comeau, Roy noticed that a car parked in front of them with a single occupant had a rag draped over its license plate obscuring the identification. Roy pointed this out to Hall who immediately yelled "let's get in there." Within five or six seconds, the three policemen had entered Sullivan's Cafe.

Sergeant Hall testified as follows. As he entered the cafe, he drew his service revolver. The first thing he saw was a man hitting another man over the head with a club. Hall yelled, "Police, freeze. Drop the club." The club was dropped. As Hall approached the club wielder to arrest him, he saw the defendant, who was walking between the entrance alcove and the bar, "throw a gun to the floor." The defendant was wearing a glove on his right hand. Patrolman Kennedy picked up the gun.

Patrolman Kennedy's testimony was to the following effect. As he entered the bar, he followed a person who had been yelling, "the cops, the cops." After grabbing this person and placing him against a set of tables inside the bar, he noticed another patron, Larry Smith, quarreling with the defendant. He saw the defendant peel off a pair of gloves and drop them on the floor. Kennedy then saw a gun on the floor which he picked up and stuffed into his waistband.

Officer Roy testified that he followed Kennedy into the bar. He pushed a person who had been in the entrance alcove ahead

[*] Of the United States Court of International Trade, sitting by designation.

of him into the bar area. Roy then looked to his left and saw the defendant walking towards him. He saw the defendant "drop a firearm to the floor and as he was walking in the same motion take off a pair of gloves, drop them to the floor, and try to stroll into the crowd that was opposite the bar on the opposite side."

In response to a call for assistance, additional police arrived at the scene within two or three minutes after Hall, Roy and Kennedy had entered the bar.

The defense was twofold: that the defendant was not where the police located him in the bar and, therefore, could not have dropped the gun; and that no gun had been dropped at all. The first defense witness was the bartender. He testified that, after those arrested had been taken away, the police searched behind the bar, went through drawers, and turned over garbage cans. Although not so specified in his testimony, it can be fairly assumed that the bartender was referring to the police who came to help Hall, Roy and Kennedy.

It was the testimony of Shirley Ann Lewis that led to the exclusionary ruling and this must be tracked in some detail. Lewis testified that she had been in the bar, and saw the police enter and make arrests. After those arrested were removed and Hall, Roy and Kennedy had left, she attempted to leave but was kept there for questioning. According to Lewis, a woman police officer searched her purse and the police told her that the reason for the search was that they were looking for a gun. The prosecutor objected to the testimony that the police said they were looking for a gun on the grounds that it was hearsay. After a lengthy conference outside of the presence of the jury, the court ruled that the testimony could stand. Lewis was then asked, "While you were in the bar, did you watch the activities of the police officers?" She answered: "Yes, they were kicking trash cans around looking for a gun, I mean, they were [sic] where's the gun, where's the gun. I don't know what they were—they were looking for a gun

which wasn't there." No objection was made to this statement.

Lewis further testified that she was taken to the police station and while there, "a police officer come [sic] in and said to me 'where's the gun? We're going to charge your husband with the gun.'" The prosecutor's objection to this testimony was sustained, as was an objection to testimony that in answer to police questions she said she didn't know where the gun was.

The next question, obviously repetitive, was "What did you say to the police?" The prosecutor objected, the court excused the jury and conferred with counsel. After hearing argument from both sides, the court stated:

Here's what I'm going to do, this is going to be my ruling. I'm going to instruct the jury they will disregard this lady's statement that she said: I'm looking for a gun. The only part that I'm going to allow in is that she searched her bag. I'm also going to tell them that any statements that have been heretofore testified to by prior witnesses, that the policemen who were looking in the trash and garbage cans and said where is the gun; I'm looking for a gun, will be disregarded. I'm going to put on the record as I am doing now that though I think this is admissible under 803(3), I feel, however, that you could easily have laid the groundwork for this to overcome any possible hearsay problem, and that you just simply did not do it, knowing exactly what your strategy was to be in this case.

It is necessary to point out that the only witness who testified that the police said "Where's the gun?" was Lewis. The bartender testified as to the searching activities of the police, but not as to any statements they made. The other eye witness who testified prior to Lewis was Clyde M. Stevens, and his testimony did not include any statements attributed to the police.

The court put on the record its reason for excluding the police statement testimony:

I'm excluding it even though a very respectable argument can be made under

803(3) that it should be admissible, and I'm also excluding it because you certainly can get that evidence in without running the—without creating the problem of hearsay that has been raised by the objection of the prosecution. And I'm also ruling that way because you're not barred from bringing that evidence in at this stage of your proceedings since every one of the police officers will be made available to you if you want to call them in.

The court then instructed the jury:

Members of the Jury, you have heard testimony from this witness to the effect that a policewoman said she searched her bag and said she was looking for a gun, and you also heard testimony to the effect that police officers look [*sic* ] in garbage cans and drawers, or whatever it was, as you remember the testimony, looking for a gun, because that's what they said. The evidence that the bag was searched remains on the record. The evidence that the police officers looked in garbage cans and looked in drawers remains on the record. The evidence as to what they said is stricken, that the police lady says I'm looking for a gun, or that the police officers says [*sic* ] we're looking for a gun, or where is the gun, that is stricken from the record, and you will not consider those statements in your deliberations.

Defense counsel did not follow the court's suggestion that he avoid the hearsay problem by calling the police as witnesses, so we must decide the issue. There are two statements by Lewis to be considered: that she was told by the police that they were searching her purse because they were looking for a gun; that in the process of kicking over trash cans the police said, "where's the gun, where's the gun." [1]

■ Although there was no objection to the second statement, we will treat it as if one had been made because the court and

parties have done so. We agree with the district court that Lewis' testimony as to both police statements was admissible under Federal Rule of Evidence 803(3). The rule provides:

**Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial**

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(3) **Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The prosecutor's insistence that the statements were hearsay misses the point; even though they were hearsay, they were admissible to show the existing state of mind of the police. The essence of the testimony of Officers Hall and Roy was that the defendant dropped a gun on the floor. Kennedy testified that he picked up a gun from the floor at the place where Hall and Roy said they saw defendant drop one. Within two or three minutes after the gun was allegedly dropped and retrieved, other police officers arrived on the scene in response to Sergeant Hall's call for assistance. These officers entered the bar, insisted on searching Lewis' purse, carried out a search behind the bar, and turned over garbage cans. What they said during these activities would indicate why they took the action they did. According to Lewis, they said they were looking for a gun. As the district court recognized, the statements were "a very essential element of this man's defense." If the jury believed Lewis, it could infer that no gun had been dropped on the floor at all. Lewis'

<hr/>

**1.** At the trial, defendant did not press for the admission of the statements allegedly made to Lewis by the police at the police station nor has

he done so on appeal. This reflects good judgment.

testimony, if believed, eroded the foundation of the government's case. The state of mind of the police as evinced by what they said during the search was, therefore, an important issue.

The least complicated situation involving mental state to which Rule 803(3) applies is when the statement is used to evidence a state of mind in issue.

When a declaration is used to evidence a state of mind directly in issue, one encounters little difficulty in justifying the admission of the declaration. State of mind has to be proved in some way and frequently other evidence is nonexistent or inadequate. Any inferences to be drawn by the jury move directly from the extra-judicial assertion to state of mind to be proved, thus involving minimal dangers of wayward reflection.

4 J. Weinstein & M. Berger, Weinstein's Evidence § 803(3)[03], at 803–111 (1984) (footnotes omitted) (quoting Slough, *Spontaneous Statements and State of Mind*, 46 Iowa L.Rev. 224, 230 (1961)). The case law is to the same effect: *United States v. Kelly*, 722 F.2d 873, 878 (1st Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1425, 79 L.Ed.2d 749 (1984); *United States v. Terry*, 702 F.2d 299, 314 (2d Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 482, 78 L.Ed.2d 680 (1983); *United States v. Green*, 680 F.2d 520, 523 (7th Cir.), *cert. denied*, 459 U.S. 1072, 103 S.Ct. 493, 74 L.Ed.2d 635 (1982); *United States v. Cosby*, 601 F.2d 754, 759 (5th Cir.1979). The state of mind exception to the hearsay rule is one of long standing. *See United States v. Annunziato*, 293 F.2d 373, 377 (2d Cir.), *cert. denied*, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 134 (1961).

■ The next question is whether, despite the admissibility of Lewis' testimony under Federal Rule of Evidence 803(3), the district court could exclude it because there was an alternative method of introducing it without involving hearsay. The district court was correct that any hearsay problem could have been avoided if defense counsel had called the police as witnesses and asked them about the statements they allegedly made. If the police admitted making the statements, there was no admissibility problem; if they denied making the statements, then Lewis could have testified in contradiction. Although this may have avoided the hearsay hurdle, we do not think that defendant could be forced into taking that alternative.

Defendant had a right under the rule to have Lewis testify as to what the police said during the search of her purse and the bar. The rule specifically states that "[a] statement of the declarant's then existing state of mind" is "not excluded by the hearsay rule, *even though the declarant is available as a witness.*" (Emphasis added). If the district court had excluded the evidence on the ground urged by the government, that it was hearsay, it would have been error.

We know of no case holding or even suggesting, and the government has cited none, that counsel must introduce testimony in a manner so as to avoid evidentiary problems. It is the essence of our adversary system that counsel, not the court, chooses how evidence is to be presented. Trial tactics and strategy are the responsibility of counsel. Counsel offers the testimony; the court determines its admissibility based on the rules of evidence, not whether an alternative method of introducing it would be preferable. Particularly in a criminal case, a defendant cannot be penalized by the exclusion of otherwise admissible testimony because his counsel has chosen to proceed in a manner which requires a difficult ruling by the court. Nor can counsel be deprived of that choice even if, as the judge suspected here, his purpose was to force a ruling by the court that might enhance his client's chances on appeal. That is not an unusual trial tactic. We also note that, given a choice, defense counsel in a criminal case might well want to avoid calling hostile police officers as witnesses even though rebuttal testimony is available.

■ We must disagree with the government's contention that the exclusion could not have affected the trial result or any substantial right of the defendant. Its

suggestion that Lewis' testimony would not have been believed by the jury is not within our province; issues of credibility are for the jury. Nor can the ruling be viewed as harmless error. The testimony was, as the district court recognized, the core of the defendant's case. Just before the evidence closed, the district court, in excluding from evidence the facts of a prior felony conviction, stated, "I think as the case now stands we have a very debatable point as to whether or not this jury will convict this man." The testimony of Lewis might well have swung the jury the other way. We have no alternative but to order a new trial.

## II. SEVERANCE

■ Appellant contends that the district court erred in not severing Counts I and II. He argues that, because under Count I, 18 U.S.C. § 922(h),[2] it was necessary to inform the jury that he was a convicted felon, this prejudiced the jury in considering the evidence against him on Count II, 18 U.S.C. § 922(k).[3] The answer to this contention is that in the context of this case there was no room for any play of prejudice. All of the factual and credibility issues were focused on Count I. There is no question that two of the three serial numbers on the gun were obliterated. The gun was put in evidence and the jury could examine it. At the trial, defendant never contended that the serial numbers had not been obliterated. Under 18 U.S.C. § 922(k), it makes no difference who removed, obliterated or altered the serial numbers. All the government had to prove was that the defendant had knowing possession of the gun. Once the jury found under Count I that defendant knowingly possessed the firearm, there was no factual defense to Count II. The

jury might have been prejudiced against the defendant because he was a convicted felon, but the prejudice, if there was any, could not have affected the verdict. The district court did not abuse its discretion in denying the motion to sever.

## III. THE SENTENCING

There are three sentencing issues: whether defendant could have been given consecutive sentences under Counts I and II; whether defendant's sentence was disproportionately severe; and whether the dangerous special offender sentence should be vacated because the government did not follow the notice requirements of the statute.

### The Consecutive Sentences

■ Defendant argues that because the two crimes arose out of a single course of conduct where intent need be proved only for one, "consecutive sentences were inappropriate and illegal because the Government was not required to prove criminal intent for each offense." This contention is based on purely philosophical grounds; at oral argument, appellant candidly admitted that he could find no cases supporting this proposition. We find nothing in the legislative history of the statute or in the Constitution that forbids consecutive sentences for convictions of violating 18 U.S.C. § 922(h) and § 922(k). See *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed.2d 306 (1932) and all the cases in between.

### The Severity of the Sentence.

The record shows that the district court gave consideration to all aspects of sen-

---

**2.** Section 922(h) provides in pertinent part:
  It shall be unlawful for any person—
    (1) who is under indictment for, or who · has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
    . . . .
  to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

**3.** Section 922(k) provides:
  It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered.

tencing, including proportionality. In light of the defendant's extensive criminal record, which shows a marked propensity for violence, there is no merit in his contention that the sentence was disproportionately severe.

*Notice Under the Dangerous Special Offender Statute*

We assume that the government will carefully follow the notice requirements of the Dangerous Special Offender Statute the next time around so there is no need to consider this issue.

*Reversed and Remanded.*