**UNITED STATES of America, Appellee,**

v.

**Gerard T. OUIMETTE,
Defendant-Appellant.**

**No. 1216, Docket 85–1337.**

United States Court of Appeals,
Second Circuit.

Submitted April 28, 1986.

Decided Aug. 8, 1986.

Edward J. Romano, Providence, R.I., submitted a brief, for defendant-appellant.

Stanley A. Twardy, Jr., U.S. Atty., Thomas E. Booth, Dept. of Justice, Washington, D.C., and Edwin J. Gale, Dept. of Justice, Providence, R.I., submitted a brief, for appellee.

Before NEWMAN, PIERCE and PRATT, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

Gerard Ouimette appeals from a judgment of the District Court for the District of Connecticut (T.F. Gilroy Daly, Chief Judge), convicting him, upon a jury verdict, of receipt of a firearm by a felon, in violation of 18 U.S.C. § 922(h)(1), and receipt of a firearm with an obliterated serial num-

ber, in violation of 18 U.S.C. § 922(k). Ouimette was sentenced as a dangerous special offender, 18 U.S.C. § 3575, to nine years' imprisonment and a committed fine of $5,000 on each of the two counts, the sentences to run consecutively. On appeal, he challenges the District Court's failure to give requested jury instructions, the imposition of consecutive sentences, and the rejection of his motion for a new trial based on newly discovered evidence. For reasons that follow, we affirm with respect to the conviction but remand for a hearing and findings with respect to the motion for new trial.

### Background

Appellant's arrest stemmed from an incident that occurred in Providence, Rhode Island, on June 10, 1982. Patrolling police officers heard what they believed to be a muffled gunshot from within Sullivan's Cafe, a Providence bar. Upon investigating, the officers discovered a scene of confusion and brawling inside the bar. The officers testified that, during the melee, they observed appellant drop a revolver and a pair of gloves to the floor. These items were retrieved by the officers and marked for identification, and Ouimette was arrested. Upon inspection, it was discovered that the revolver's serial number had been altered. Before trial, appellant stipulated that he had been convicted of a felony.

Appellant was originally tried and convicted of violating sections 922(h)(1) and 922(k) in the District of Rhode Island. That conviction was reversed by the First Circuit in *United States v. Ouimette*, 753 F.2d 188 (1st Cir.1985), on evidentiary grounds unrelated to the current appeal. Appellant was reindicted, and his case was transferred to the District of Connecticut, where he was again convicted on both counts. After his motion for a new trial based on newly discovered evidence, Fed.R. Crim.P. 33, was denied, Ouimette brought this appeal.

### Discussion

1. *Jury instructions.* Ouimette contends that the District Court committed reversible error by failing to give two jury instructions that he requested. First, he sought an instruction that the police were particularly interested witnesses and therefore their testimony should be carefully scrutinized. Second, he requested a "missing witness" charge in light of the prosecution's failure to call certain Rhode Island police officers who were in the chain of custody of the gun. The Court declined to give these specific instructions. Instead, the trial judge advised the jury to scrutinize carefully all testimony, to consider whether any witness had a relation to the case or would be affected by the verdict, and to weigh the police officers' testimony as carefully as it weighed that of other witnesses. The judge also charged that if either party had "the power ... to produce a witness" but failed to call that witness, the jury could infer that the evidence not offered would be unfavorable to that party; any adverse inference, however, should be drawn only if the witness was unavailable to the other side or the testimony would not be cumulative.

In order to succeed on his challenges to the jury instructions, appellant has the burden of showing that his requested charge accurately represented the law in every respect and that, viewing as a whole the charge actually given, he was prejudiced. *See United States v. Lam Lek Chong*, 544 F.2d 58, 68 (2d Cir.1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977). He has not met that burden. The instruction given by the District Court correctly advised the jury to scrutinize carefully *all* testimony; this necessarily included the testimony of the police officers. Appellant's requested instruction would have implied that the officers were inherently untrustworthy. This is contrary to the general rule that it is inappropriate to charge that police officers testifying at trial are specially interested in the outcome of a case. *See United States v. Paccione*, 224 F.2d 801, 803 (2d Cir.) (per curiam), *cert. denied*, 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788 (1955). The facts of this

case did not warrant a departure from this rule.

■ Appellant also cannot complain of the Court's "missing witness" charge, which accurately stated the law and which presented the substance of the requested instruction. To the extent that appellant objects to the trial judge's failure to marshal for the jury the specific evidence relating to the charge, there was no abuse of discretion. *See United States v. Taylor,* 562 F.2d 1345, 1364 (2d Cir.), *cert. denied,* 434 U.S. 853, 98 S.Ct. 170, 54 L.Ed.2d 124 (1977). In sum, appellant was not prejudiced by the charge given, and the District Court properly rejected his proposed instructions.

■ 2. *Consecutive sentencing.* Appellant's contention that he cannot be sentenced to consecutive terms of imprisonment for violations of 18 U.S.C. § 922(h)(1) and (k) is governed by the rule of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger,* the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182 (citation omitted). Contrary to appellant's assertions, the *Blockburger* rule still applies with full force, *see Ball v. United States,* —— U.S. ——, 105 S.Ct. 1668, 1671–72, 84 L.Ed.2d 740 (1985); *United States v. Biasucci,* 786 F.2d 504, 515–16 (2d Cir.1986), and squarely controls the issue in this case.[1]

■ Section 922(h) makes it unlawful for certain classes of people "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce"; subsection (h)(1) specifically criminalizes receipt of any firearm by a convicted felon. Section 922(k), on the other hand, makes it unlawful "for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." Subsection (h) requires proof that a person who receives any gun is a member of a statutorily disqualified class, whereas subsection (k) demands proof that the gun possessed by any person has been altered in a way that impedes identification. The different elements of proof required by each subsection demonstrate that, under *Blockburger,* two distinct offenses exist, carrying separate penalties that may be cumulated. This result is eminently sensible; since Congress wished to criminalize receipt by a felon of *any* firearm, it surely wished to authorize more severe punishment for a felon who receives a firearm altered so as to make it untraceable.

Appellant claims that a different result is required by *Ball v. United States, supra.* This claim is without merit. In *Ball,* consecutive sentences for possession and receipt of a firearm were disallowed because the act of receiving a firearm necessarily includes possessing it. The same is not true of the offenses in the present case. Had Ouimette been found with an unaltered weapon, he would have violated section 922(h)(1) but not section 922(k). Thus, although the aggregate sentence is substantial, the District Court was entitled to impose consecutive terms of imprisonment for the two distinct offenses.[2]

3. *Newly discovered evidence.* Finally, and more troubling, is appellant's claim

---

**1.** This case does not present the issue of possible limitations on the *Blockburger* rule where a statute can be violated in numerous ways, some of which involve elements distinct from those of another statute, but is in fact violated only as to a subdivision that is not totally distinct from the other statute. *See United States v. Thomas,* 757 F.2d 1359, 1372 (2d Cir.) (Newman, J., concur-ring in part and dissenting in part), *cert. denied,* —— U.S. ——, 106 S.Ct. 67, 88 L.Ed.2d 55 (1985).

**2.** In deciding the appeal from Ouimette's first trial, the First Circuit, having already reversed the conviction and ordered a new trial, considered this issue and reached the same conclusion that we do. *See United States v. Ouimette,* 753 F.2d 188, 193 (1st Cir.1985).

that the District Court abused its discretion by denying, without a hearing, his Rule 33 motion for a new trial based on newly discovered evidence. According to appellant, he was denied the exculpatory testimony of an eyewitness to the events at Sullivan's, Anthony Williams, because members of the Providence police intimidated Williams to recant his proposed testimony and to flee to Boston, Massachusetts. On May 15, 1985, about three weeks before Ouimette's trial, Williams had told appellant's trial counsel that he was in Sullivan's at the time of the incident and saw someone other than Ouimette drop a gun to the floor. Two weeks later Williams gave a detailed signed statement to the Providence police, asserting that he had met appellant in prison in 1985, that appellant had promised him $1,000 to testify falsely that he had witnessed the events in Sullivan's, and that the two of them had carefully rehearsed the exculpatory story Williams was to tell. The prosecutor gave a copy of this statement to appellant's counsel before trial. Appellant neither subpoenaed Williams to testify nor requested a continuance to locate him.

After giving his statement to the Providence police, Williams departed for Boston. He returned to Providence periodically and was arrested there on June 11, 1985, on an unrelated matter. On November 5, appellant moved for a new trial on the basis of newly discovered evidence. The primary support for the motion was a sworn statement of Williams' dated October 18, 1985. In addition to reiterating much of Williams' original version concerning the incident at Sullivan's, the statement alleged that the Providence police had learned through an informant of Williams' plan to testify in Ouimette's defense and had subsequently staged a successful campaign of intimidation to prevent him from testifying. According to Williams, the police threatened to "bury" him with a robbery charge, harassed his friends and family, and advised him that he could be prosecuted for perjury. To escape these pressures, Williams alleged, he fled to Boston.

In response to appellant's Rule 33 motion, the Government argued that because Williams' version of the events at Sullivan's was already known to the defense before trial, the evidence was not "new." In addition, the Government suggested that due diligence was not exercised in discovering the evidence and, in any event, appellant probably would not have been acquitted even if the evidence had been available at trial. The District Court accepted the Government's reasoning and denied the motion without a hearing.

On appeal, Ouimette makes clear that the newly discovered evidence he claims warrants a new trial is not merely Williams' version of the incident at Sullivan's, but also "the revelation that Mr. Williams was functionally rendered unavailable to the defense due to the threatening remarks and activities of the Providence Police Department." Appellant's entire defense strategy at trial was to suggest that he never possessed the weapon in question and that in fact the police found no gun at Sullivan's; this strategy strongly implies that the police, apparently out of personal animus against appellant, obtained the altered weapon elsewhere and falsely represented that they had seen appellant drop it. Williams' testimony, if true, would show that the Providence police were willing to act outside the law in order to obtain Ouimette's conviction and would be extremely supportive of his defense.

■ The Government is correct that Williams' proposed testimony regarding the events at Sullivan's is not new, since Williams told appellant's counsel a similar story three weeks before the trial. However, Williams' assertion concerning the pressure put on him by the Providence police to dissuade him from testifying for the defense is certainly new in the sense that it was discovered after trial. The remaining issues, therefore, are whether the defense could, with due diligence, have located the evidence before or during trial, *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir.1980), and whether the evidence would likely have resulted in an acquittal had it

**52**

been available at trial, *United States v. Gonzalez*, 748 F.2d 74, 77 (2d Cir.1984).

■ The Government contends that appellant's lack of due diligence is demonstrated by his counsel's failure to interview Williams further and to attempt to subpoena Williams or seek a continuance in order to locate him. As to the first point, the Government ignores the fact that the alleged coercion, if it occurred, took place after Williams was interviewed by counsel and resulted in his flight to Boston. More detailed questioning at the initial interview would have revealed nothing because no threats had yet been made, and once those threats were made, Williams was no longer readily available for further questioning.

■ More perplexing is how to apply the "due diligence" standard to counsel's conduct after the initial interview. On this issue, we believe a determination cannot adequately be made without findings by the District Court as to what happened when Williams met with the Providence police, what steps Williams took thereafter to avoid being located by defense counsel, and what steps defense counsel took to locate Williams. Though some of these matters, if fairly disputed, might be issues for a jury on retrial, findings by the District Court are needed in order to make and review a determination of whether a new trial is required. Such findings will also be pertinent to the issue of whether the new evidence, if not discoverable before trial in the exercise of due diligence, would probably have resulted in an acquittal.

We therefore affirm the judgment with respect to the conviction but remand for a hearing and findings with respect to the denial of the motion for new trial.