**UNITED STATES of America,**

v.

**Edmund FUNARO, Jr.**

**No. CRIM.3:01CR17(CFD).**

United States District Court, D. Connecticut.

June 3, 2004.

James I. Glasser, Jonathan Biran, Peter A. Clark, U.S. Attorney's Office, New Haven, CT, John A. Danaher, III, U.S. Attorney's Office, Hartford, CT, for Plaintiffs.

Alan J. Sobol, Gerard S. Collins, O'Connell, Flaherty & Attmore, Hartford, CT, for Defendants.

## *RULING ON POST TRIAL MOTIONS*

DRONEY, District Judge.

Defendant Edmund Funaro, Jr., has moved the Court under Fed.R.Crim.P. 29 (hereafter, "Rule 29 Motion") to set aside the jury's guilty verdict as to all 27 counts of the Second Superseding Indictment, or, in the alternative, to grant a new trial under Fed. R.Crim.P. 33 (hereafter, "Rule 33 Motion"). Each count in the Indictment charged Funaro with illegally dispensing controlled substances, in violation of 21 U.S.C. § 841(a)(1).

### I. Rule 29 Motion

#### A. *Standard*

In deciding a motion for judgment of acquittal, the Court views the evidence presented in the light most favorable to the Government, and draws all reasonable inferences in the Government's favor. *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir.2000) (internal quotation marks and citation omitted). The evidence must be considered in its totality, not in isolation, and the Government need not negate every theory of innocence. *Id.* The Court must be careful to avoid "usurping the role of the jury," *id.*

(quoting *United States v.Guadagna*, 183 F.3d 122, 129 (2d Cir.1999)), and accordingly may not substitute its own determinations of credibility or relative weight of the evidence for that of the jury. *Autuori*, 212 F.3d at 114. The Court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *Id.* (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984)). If the Court concludes that either a verdict of guilty or not guilty was possible based on the evidence, it must uphold the jury's guilty verdict. *See Autuori*, 212 F.3d at 114. Put another way, the Court may "not disturb a conviction on grounds of legal insufficiency of the evidence at trial if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Pimentel*, 346 F.3d 285, 295 (2d Cir.2003) (internal quotation marks and citations omitted). Because the Court denied Funaro's motion for judgment of acquittal at the close of the Government's case, rather than reserving ruling, and Funaro then put on a defense, the Court at this stage evaluates the renewed motion for judgment of acquittal based on all the evidence in the case, not just that which was presented in the Government's case-in-chief. *See United States v. Velasquez*, 271 F.3d 364, 371–72 (2d Cir.2001), *cert. denied*, 535 U.S. 965, 122 S.Ct. 1382, 152 L.Ed.2d 373 (2002).

*B. Discussion*

The Government introduced substantial evidence which proved the elements of each offense charged, i.e., that Funaro knowingly dispensed the controlled substances at issue in each count and that Funaro dispensed those controlled substances with knowledge that the prescribing physician,

William J. Massie, M.D., had issued the prescriptions for those drugs outside the scope of professional practice and not for a legitimate medical purpose.

The Government introduced into evidence all the prescriptions relevant to the 27 counts charged in the Indictment, as well as additional prescriptions which the Court had ruled were admissible under Fed. R.Evid. 404(b).[1] Taken together, the prescriptions demonstrated, among other things, that between March 1, 1998, and June 5, 2000, Funaro filled approximately 284 Massie prescriptions which constituted either early fillings of at least three days or therapeutic duplications.[2] These 284 prescriptions made up approximately 20 percent of all Massie prescriptions filled by Funaro during that period. The prescriptions demonstrated that Funaro filled early and/or therapeutically duplicative Massie prescriptions for the individuals referred to by their initials in the Indictment (Crystal Austin, Edward Beard, Eudell McKinnie, Jr., Lori Milutis, Jennifer Reed, and Anthony Williams), and many other customers.

A rational juror also could have concluded from the Government's evidence that Funaro knew of a vast number of "red flags" that indicated Massie's prescriptions were not written for a legitimate medical purpose. Those include the following, in addition to the early fills and therapeutic duplications mentioned above: 1) 88 percent of Massie prescriptions filled at Visel's Pharmacy[3] were for controlled substances (Dr. James O'Brien—the Government's pharmacological expert—testified that a general practitioner typically would have written more prescriptions for non-controlled substances than for controlled substances), 2) 96 percent of the Massie controlled substance prescriptions were for one of six drugs, or their generic equivalent, in strikingly similar quantities and dosages; 3) 30 percent of Massie pa-

---

1. A limiting instruction was given to the jury at the time of the introduction of the Rule 404(b) evidence.

2. Filling a prescription "early" means filling a prescription for a controlled substance within the coverage period of a prescription the patient had previously received for the same controlled substance. A "therapeutic duplication" is a pre-

scription for a controlled substance filled within the coverage period of a prescription for another controlled substance having the same pharmacological action.

3. Funaro is part owner of Visel's and worked there as a pharmacist.

tients that filled prescriptions at Visel's received prescriptions for Tussionex, a narcotic cough syrup that is widely abused and highly addictive; 4) Massie patients often came to Visel's in groups, bearing similar prescriptions from Dr. Massie in terms of drug type and dosages; 5) a significant portion of the Massie patients that filled their prescription at Visel's were from towns other than New Haven; 6) Massie patients often presented prescriptions written for other persons; 7) many Massie patients paid cash for their prescriptions shortly before, or shortly after, using their State insurance cards to pay for other Visel's prescriptions; and 8) the computer system at Visel's would have shown Funaro when he was filling a new prescription the history of early refills and therapeutically duplicative Massie prescriptions.

Based on the testimony of Dr. O'Brien and the other evidence presented, the jury properly and reasonably concluded that a pharmacist in Funaro's situation would know from this evidence that the prescriptions at issue were not written for a legitimate medical purpose.

The Government also introduced the testimony of Cheryl Amato, a registered pharmacist who worked for a short time at Visel's. Ms. Amato testified that she became uncomfortable with the large numbers of controlled substance prescriptions being brought in by Massie's patients. During the time that she was at Visel's, approximately 40 percent of all controlled substance prescriptions Amato filled were written by Massie. Amato's testimony could have contributed to the jury's conclusion that Funaro—who had been working either as an apprentice or as a pharmacist at Visel's since 1980—knew that Massie was prescribing controlled substances improperly.

The Government also introduced evidence concerning the issue of Funaro's intent by way of the testimony of Agent Deborah Komoroski of the Connecticut Department of Consumer Protection, Drug Control Division, and the other case agent, DEA Diversion Investigator Leonard Levin, who both testified concerning incriminating statements Funaro made during a routine audit of Visel's in April–May 1999. The agents testified that Funaro told them that the vast majority of Massie's patients received prescriptions for controlled substances. In addition, Funaro acknowledged to the agents that he should not be filling Massie's prescriptions early; said that he would not do so in the future; and told Levin that he would contact him if Massie's patients came into Visel's with more early prescriptions. According to the agents, Funaro also told them that Massie's patients had drug problems and were questionable. When asked why he filled Massie's prescriptions for controlled substances if Massie's patients had drug problems and were questionable, Funaro told the agents that it was their job to police Massie, not his, and that if they were not going to do anything about Massie, he would continue to fill Massie's prescriptions as long as Massie was licensed and had a controlled substance registration. The jury could reasonably conclude from the agents' testimony concerning these conversations with Funaro that Funaro knew Massie was prescribing controlled substances outside the scope of professional practice and not for a legitimate medical purpose.

When all the evidence presented at Funaro's trial is viewed in the light most favorable to the Government, a rational juror could have concluded—as did the 12 jurors at trial—that the Government proved Massie had written the prescriptions in issue outside the scope of professional practice and not for a legitimate medical purpose; and that Funaro knew this was the case when he filled them, and thus acted with the requisite knowledge and intent to be found guilty of the charged offenses.

Accordingly, Funaro's renewed motion for judgment of acquittal under Fed.R.Crim.P. 29 [Doc. # 372] is DENIED.

## II. Rule 33 Motion

### A. Standard

■ "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). "The rule by its terms gives the trial court 'broad discretion ... to set aside a jury verdict and order a new trial to avert a perceived miscarriage

of justice.'" *United States v. Ferguson,* 246 F.3d 129, 133 (2d Cir.2001) (quoting *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992) (alterations by the Court)). In exercising its discretion conferred by Rule 33, the Court may weigh the evidence and evaluate the credibility of witnesses. *Sanchez,* 969 F.2d at 1413 (citing *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir.1980)).

The burden of persuasion is on the defendant to demonstrate that a new trial is appropriate. *United States v. Sasso,* 59 F.3d 341, 350 (2d Cir.1995). "Generally, the trial court has broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *Ferguson,* 246 F.3d at 134 (quoting *Sanchez,* 969 F.2d at 1414). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Ferguson,* 246 F.3d at 134.

### B. Discussion

Funaro has asserted three grounds for granting his motion for a new trial. First, he claims that the Court erred in permitting the jury to consider evidence concerning Massie's medical practice. Second, Funaro claims that the Court erred in not including a number of his proposed jury instructions in the final charge to the jury. Third, Funaro claims that the jury's verdict was contrary to the weight of the evidence and constituted a miscarriage of justice.

### 1. Evidence Relating to the Conduct of Massie's Medical Practice

Funaro waived the right to challenge the admission of this evidence concerning Massie, his medical practice, and his patients' conduct. Funaro filed several pretrial motions in limine concerning the evidence that he now says was irrelevant and prejudicial. In particular, Funaro filed a motion in limine to exclude evidence concerning the conduct of Massie and his "patients" [Doc. # 304]. The Court denied these motions in limine, including # 304, without prejudice to renewing them at trial. At trial, Funaro neither renewed his motions in limine to exclude this evidence, nor interposed any objection to admission of any of the evidence that he now asserts should have been excluded. Funaro's failure to renew his pretrial objections or to make trial objections to the complained-of testimony constitutes a waiver of those objections. *United States v. Valenti,* 60 F.3d 941, 944–45 (2d Cir.1995).

Moreover, Funaro opened the door to much of the evidence of which he now complains. By attempting to demonstrate through cross-examination of the Government's witnesses and presentation of his own evidence that Massie was a competent physician, treating people for what Funaro tried to establish were legitimate medical problems, Funaro made a tactical decision to examine the bona fides of Massie's medical practice. These cross-examinations brought out many of the unprofessional practices of Dr. Massie, including controlled substances prescriptions not justified by the medical conditions presented to Massie, examinations which at best could be described as cursory but which resulted in controlled substance prescriptions, and comments by these witnesses which showed that Massie's examinations and prescriptions were known by them to be inappropriate.

As mentioned, the defense's strategy of inquiring into Massie's medical practice as well as the conduct of Massie and his patients was not confined to cross-examination of the Government's witnesses. All three of Defendant's former Massie patient witnesses testified on direct examination that Massie conducted a legitimate medical practice. In addition, however, they also testified about questionable medical practices at his office. For example, defense counsel elicited from Ellsworth Simmonds that Massie at times abruptly left his office with patients still lined up waiting to see him. Mr. Simmonds also testified on direct examination that he had to brave the long lines outside Massie's office, even in cold weather, so that his wife, Eleanor Simmonds, might be able to get her prescriptions from Massie. Another defense witness, Willie Mae Nesmith, testified that she stopped obtaining prescriptions from Massie · in 1998 and that she never filled

prescriptions at Visel's with her brother and sister-in-law. Yet the jury saw documentary evidence that Funaro continued to fill prescriptions in Nesmith's name well into 2000 and on at least one occasion in 1999 filled a prescription for her immediately before filling prescriptions in the names of her brother and sister-in-law. The jury could infer from this evidence that the 1999 and 2000 prescriptions in Nesmith's name were fraudulently obtained from Massie by her relatives and filled at Visel's without her present, from which the jury could conclude that Funaro turned a blind eye to suspicious circumstances.

It is clear that it is Funaro who explored the legitimacy of Massie's medical practice in an effort to show that the prescriptions Massie issued were justified. Moreover, Funaro failed to object to evidence adduced by the Government concerning that issue. The Court also repeatedly cautioned the jury at trial that they were not to consider that Massie was a target of the investigation and was arrested as substantive evidence of any wrongdoing by Funaro. The language of that instruction was reviewed with and approved by defense counsel before it was first given to the jury. As discussed in more detail below, the Court also instructed the jury concerning good faith in its charge, and told the jury that if they found that Funaro had acted in good faith, they had to acquit him. Furthermore, Jury Instruction 14 specifically directed that, in considering Funaro's case, the jury should base their verdicts only on evidence pertaining to him, and that, even if they found that Massie was not dispensing prescriptions for controlled substances for a legitimate medical purpose in the usual course of professional practice, they could only find Funaro guilty if the

Government had proved the elements of the offenses beyond a reasonable doubt *as to Funaro*.[4] It thus was clear to the jury that the purpose of much of the evidence Funaro presently complains of was only to rebut an inaccurate portrayal of Massie's practice that Funaro was attempting to establish, and not to incriminate Funaro by association.

As part of his argument, Funaro also claims that the Government failed to produce any evidence that Funaro was aware of the activities of the "Calash group." *See* Rule 33 Motion at 6–7. A rational jury could infer from the evidence presented at trial, however, that Funaro himself repeatedly dispensed controlled substances for the same four members of the Calash group, sometimes early, always for the same type of drugs, at the same times, and in strikingly similar quantities and dosages. The evidence also showed that Calash himself obtained prescriptions for members of the group and had them filled at Visel's.

In sum, Funaro waived any right to pursue the evidentiary issues raised in this portion of his Rule 33 Motion. In any event, all of the evidence was properly admitted either as direct evidence of Funaro's culpability or as relevant to a topic that he himself wished to develop. The Court's instructions during trial and in its charge also ensured that the Massie evidence was considered only for an appropriate purpose.

### 2. Jury Instructions

 Funaro challenges the Court's decision not to include certain of his proffered instructions in the charge read to the jury. See Rule 33 Motion at 10–13. A defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in the evidence. *United States v. Prawl*,

---

4. Jury Instruction 14 provided:
 You are about to be asked whether or not the government has proven the defendant's guilt beyond a reasonable doubt. You are not being asked whether any other person has been proven guilty. Your verdict should be based solely upon the evidence or lack of evidence as to this defendant, in accordance with my instructions. In particular, as to each count of the indictment, if you find that Dr. Massie was dispensing prescriptions for controlled substances for a legitimate medical purpose in the usual

course of professional practice, you must acquit Mr. Funaro. However, if you find Dr. Massie was not dispensing prescriptions for controlled substances for a legitimate medical purpose in the usual course of professional practice, you may only find Mr. Funaro guilty if the government has proved the elements of the offenses beyond a reasonable doubt as to Mr. Funaro.
 Neither counsel for Funaro or the Government requested this instruction; notwithstanding, the Court gave it to the jury.

168 F.3d 622, 626 (2d Cir.1999). However, "defendants are not necessarily entitled to have the exact language of the charge they submitted to the district court read to the jury. Rather, a charge is sufficient if it adequately appraises the jury of the crime and the defense." *United States v. Johnson,* 994 F.2d 980, 988 (2d Cir.1993) (internal quotation marks and citations omitted). To prevail on a contention that the trial court erred in refusing to give requested instructions, the defendant must establish that his own proposed language accurately represented the law in every respect and that the charge actually given, viewed as a whole, prejudiced him. *United States v. Dove,* 916 F.2d 41, 45 (2d Cir.1990) (citing *United States v. Ouimette,* 798 F.2d 47, 49 (2d Cir.1986)). In order to establish prejudice he must demonstrate that the instruction given misled the jury as to the correct legal standard or that it did not adequately inform the jury of the law. *United States v. Masotto,* 73 F.3d 1233, 1238 (2d Cir.1996) (citing *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994)).

■ Funaro has failed to meet his burden to show that there was any error in the jury instructions in this case. He has not shown that the instructions given by the Court on the issues he raises were misleading or inaccurate. Also, he has not demonstrated how the requested instructions did not accurately reflect the law in all respects, and, most important, he has not stated how he was prejudiced by the Court's instructions. His claim of prejudice appears to be that his proposed instructions "were more precise and would have given the jurors a more careful and understandable instruction as to the elements required for the jury to find a 'knowing' violation of the law, as well as the weight and degree of persuasiveness required for the Government to prove guilt beyond a reasonable doubt." Rule 33 Motion at 13.

However, Funaro's three proposed instructions quoted on page 11 of his Rule 33 Motion were adequately covered by the Court's instruction quoting the relevant portion of the C.F.R. section cited by Funaro [Jury Instruction 20], and the Court's instruction on the elements of the offense [Jury Instruction 13], which informed the jury that in order to convict they must find that the defendant knew the prescriptions were not written in the scope of legitimate practice, and the Court's definition of "knowingly" [Jury Instruction 16]. The Court also explained the "good faith" defense [Jury Instruction 19].

Notwithstanding these instructions, Funaro argues that his requested instructions would have given the jurors a better frame of reference to distinguish between the conduct of Massie and himself. However, as mentioned, the Court gave an instruction [Jury Instruction 14] that the verdict was to be based on the evidence or lack thereof against Funaro, not Dr. Massie or anyone else, and that the Government was required to prove each element of the offense as to Funaro.

Defendant next addresses specific numbered instructions that he requested. Number 3 requested that the jury be instructed that Funaro must have knowingly and deliberately dispensed a controlled substance other than in good faith. The Court's instructions on the elements of the offense and the defense of good faith addressed this topic. Funaro's proposed instructions 4, 13, 14, 18, 21, 22, 23, 29, and 34 were simply alternative formulations of the "good faith" defense, which was included in the Court's jury charge. Request number 31 was simply a restatement of an element of the offense, also given in substantially the same language by the Court.

Finally, Funaro claims that he was prejudiced by the Court's failure to adopt specific wording changes he requested at the charge conference for Proposed Jury Instructions 5 and 12. In particular, Funaro requested that the words "serious crimes" in the second paragraph of Instruction 5 be replaced by "committing offenses under the Indictment."[5] He also asked that the sentence in

---

**5.** The complete second paragraph of Jury Instruction 5, as given to the jury, is:

The case is important to the government, for the enforcement of criminal laws is a matter of prime concern to the community. Equally, it is important to the defendant, who is charged with serious crimes.

Instruction 12 that followed the Court's reading of the indictment be changed from "[t]he defendant has denied that he is guilty of these charges" to "the defendant has denied any wrongdoing and has pleaded not guilty to these charges." Funaro claims that both of these changes were "more proper" because they were "consistent with the presumption of innocence." As noted above, defendants are not always entitled to have the precise language they request included in the final charge, as long as the charge given appraises the jury of the crime and the defense. *See Johnson*, 994 F.2d 980, 988 (2d Cir.1993). Neither of the charges complained of were inconsistent with the instructions on presumption of innocence that were given. With regard to Instruction 5, the Court was reminding the jury of the seriousness of the crimes *charged;* there is no suggestion from the language of the instruction that the defendant should not be presumed innocent. Also, Instruction 12 simply informed the jury that the defendant denied that he was guilty and there is nothing in the language of that charge that suggests a departure from the presumption of innocence. Moreover, the Court gave a separate instruction which stated that "I instruct you that you must presume the defendant to be innocent of the crimes charged." Thus, the Court's instructions were consistent with the presumption of innocence, and Funaro was not prejudiced by the Court's refusal to use the precise language he requested.

In sum, Funaro has failed to demonstrate that he was prejudiced in any fashion by the Court's instructions as given, or by the Court's declination to instruct in the precise wording of any instruction requested by Funaro.

### 3. *Weight of the Evidence and Miscarriage of Justice*

As discussed in detail in ruling on Funaro's Rule 29 Motion above, there was substantial evidence introduced at trial which supports the jury's verdict, including the numerous obviously deficient prescriptions and other "red flags." The jury was entitled to credit Dr. O'Brien's testimony and reject that of Dr. Saberski (Funaro's expert).[6] The jury also was entitled to infer from the testimony of Agent Komoroski and Investigator Levin regarding Funaro's statements that Funaro knew it was wrong for him to fill Massie's prescriptions early and that he knew Massie was improperly issuing prescriptions. Viewing the evidence under the standard and through the perspective for a Rule 33 Motion, the Court concludes that the verdicts were supported by sufficient, competent evidence to prove each count beyond a reasonable doubt, were not contrary to the weight of the evidence, and that the interests of justice do not require that the verdicts be vacated. Accordingly, the motion for a new trial [Doc. # 375] is DENIED.

### III. Conclusion

For the foregoing reasons, the defendant's Renewed Motion for Judgment of Acquittal [Doc. # 372] as well his Motion for New Trial [Doc. # 375] are DENIED.

**6.** Portions of Saberski's testimony in fact supported the Government's case.