06-1078-cr(L)
*United States v. Owen*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————

August Term, 2006

(Argued: May 11, 2007     Decided: September 4, 2006)

Docket Nos. 06-1078-cr(L), 06-1331-cr(XAP)[*]

————

UNITED STATES OF AMERICA,

*Appellant-Cross-Appellee*,

–v.–

LANCE EDGAR OWEN,

*Defendant-Appellee-Cross-Appellant.*

————

Before:

B.D. PARKER, RAGGI, WESLEY, *Circuit Judges*.

The Government appeals from a February 6, 2006 order of the United States District Court for the Southern District of New York (Patterson, *J.*) granting defendant's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 on the basis of newly discovered evidence.

REVERSED.

————

WILLIAM J. HARRINGTON, Assistant United States Attorney, *on behalf of* Michael

———

[*] 06-1331-cr(XAP) closed – withdrawn by motion order filed October 18, 2006.

J. Garcia, United States Attorney for the Southern District of New York (Jacob W. Buchdahl and John M. Hillebrecht, Assistant United States Attorneys, on the brief), *for Appellant*.

JAMES A. COHEN, Lincoln Square Legal Services, Inc., New York, NY (Michael W. Martin and Gemma Solimene, on the brief), *for Defendant-Appellee*.

WESLEY, *Circuit Judge*:

The Government appeals an order of the district court granting defendant Lance Edgar Owen a new trial on the basis of newly discovered evidence. The Government charged Owen and codefendants Mark Baroody and Paul Samuels with two counts of violating Title 21 of the United States Code. Count One charged Owen, Baroody and Samuels with conspiring to distribute in excess of 100 kilograms of marijuana, in violation of 21 U.S.C. § 846. Count Two charged the defendants with distributing and possessing with intent to distribute approximately 175 kilograms of marijuana in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). After a four day trial, the jury convicted all three defendants on both counts. The district court (Patterson, *J.*) sentenced Owen to the mandatory minimum sentence of sixty months imprisonment. At Samuels' sentencing hearing, he made statements for the first time purportedly exculpating Owen. Because Samuels exercised his right not to testify at trial, Owen claimed Samuels' statements were newly discovered evidence warranting a new trial. The district court agreed and granted Owen a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). We reverse. Because Samuels' testimony related to his direct dealings with Owen, Owen was – or certainly should have been – aware of the substance of Samuels' testimony prior to trial, and, thus, it was not "newly discovered" within the meaning of Rule 33 when it was offered by

Samuels at sentencing.[1]

## BACKGROUND

In April of 2004, agents of the Drug Enforcement Agency ("DEA") were alerted by a confidential source to suspicious activity at a warehouse in the Bronx, New York. The source claimed that, on numerous occasions, Paul Samuels entered the warehouse to retrieve large boxes of marijuana and loaded them into his or other persons' cars. Special Agent Eric Baldus and his partner conducted surveillance of the warehouse during normal business hours on two or three occasions but did not see anyone enter or exit the warehouse and the doors to the warehouse remained closed. On June 7, 2004, agents again received information concerning activity at the warehouse, causing them to resume their surveillance the following day.

At approximately 11:15 a.m. on June 8, Agent Baldus observed Samuels standing outside the warehouse, directing a white box truck into the loading bay. When the truck stopped, Baldus saw Owen exit the driver's side door and enter the warehouse with Samuels. From Baldus' surveillance point he could not see into the box of the truck or the warehouse because the truck was flush with the loading bay. However, Baldus observed that, over the next hour, the truck gently shook back and forth, as if it was being loaded or unloaded. Baldus testified that, at one point, Owen came out of the warehouse and entered the passenger side of the truck's cab, where he retrieved a notebook, and then returned to the warehouse. A short time later, Owen came out of the warehouse, put the notebook back in the cab, and returned to the warehouse. The book

---

[1] *United States v. Mark Baroody and Paul Samuels*, Doc. Nos. 05-5259-cr(L), 05-6924-cr(con), a case argued in tandem with this appeal, is decided by a summary order issued contemporaneously with this opinion.

turned out to be a receipt book that the Government introduced at trial.

At approximately 12:15 p.m., Owen, Baroody and Samuels exited the warehouse together. After a brief conversation with Samuels, Owen got into the truck and drove away. Baldus called for agents to follow the truck. Samuels then locked the warehouse and he and Baroody got into a Ford sedan and drove off as well. Baldus tried to follow the Ford himself but was unsuccessful.

Agents pulled Owen over near the entrance to Interstate 95. Special Agent Joe Doherty approached the driver's side of the truck and asked Owen for his license and registration. Owen explained to Doherty that he was a part-time mover and was in the process of moving some items to Florida for a client there. Owen showed Doherty a document that was purportedly a proposal and receipt for moving household items from the Bronx to an address in Tampa, Florida, for a woman named Susan Thomas. The receipt stated that Owen was to receive $1,800 dollars for the job. The receipt also stated that Owen was to drop the items off at 1835 Humphrey Street in Tampa and it listed a contact number for Susan Thomas. Investigators subsequently determined that the address on the receipt did not exist and the phone number was not working.

Doherty took Owen to the back of the vehicle where he asked Owen if there were any bombs, guns or drugs in the box of the truck. Owen replied that there were not. Doherty requested to see for himself and Owen obliged, removing a padlock and opening the door to the box. Doherty and Special Agent Chris Oksala, who was also present, testified at trial that immediately upon opening the door, they smelled the strong scent of marijuana.

When Doherty climbed into the box of the truck, he observed various items of furniture

and appliances, including a washing machine, a refrigerator, bed boards, beds, and box springs. These items were described at trial by one witness as "old stuff that was pretty much garbage." Doherty found a number of boxes with individually-wrapped items of clothing. Upon moving the clothing to one side, Doherty discovered bundles of marijuana wrapped in a cellophane-like material. Doherty made his way out of the truck and promptly placed Owen under arrest.

Owen had rented the truck, and, although he claimed to be headed for Tampa, the rental agreement stated that the truck had been rented for a one-way trip between the Bronx and Philadelphia, Pennsylvania. In addition, the agreement required Owen to return the truck to Philadelphia no later than two days after he picked it up in the Bronx, and limited Owen to 124 miles of travel. If the truck was returned late, the rental agreement provided that Owen would be charged $60 for each additional day; for each mile Owen drove the truck in excess of the stated limit, Owen would be charged $0.60. Tampa is over 1,000 miles from Philadelphia. Thus, the round trip would have cost Owen $1,200 in mileage alone, excluding gas and late fees.

During his safety valve hearing, Owen testified that he was willing to incur these additional charges, despite the fact that he was only to receive $1,800 for the moving job, because he was going to tow a used Chevy Caprice to Atlanta[1] and sell it for $800 or $900. Owen stated that he purchased the car for $200 in the Bronx with the intention of selling it in Atlanta. Owen conceded that he did not have a buyer for the car but confidently asserted that he

---

[1] Adding a stop in Atlanta while traveling from Philadelphia to Tampa increases the total return trip distance by approximately 400 miles, thus adding an additional $240 in excess mileage charges to the total cost of Owen's trip – again, excluding any additional gas and late fees.

could find one with little difficulty once in Atlanta. Owen was not towing a Caprice when the police pulled him over; he claims he was arrested before he could pick up the car. Owen testified that another reason he was willing to embark on such an unprofitable venture was because it would allow him to pick up his children, who lived in Atlanta with their mother. Owen stated that his children were out of school for the summer and that he intended to bring them back to New York with him for a visit.

After Owen's arrest, the drugs were seized and the truck was returned to Budget Truck Rental. The agent who had rented Owen the truck contacted Owen and inquired about the disposal of the contents – the furniture and appliances allegedly belonging to Susan Thomas. Owen told the agent that he should "just get rid of it."

When DEA agents returned to the warehouse, they discovered it was almost bare, save for a forklift, a single wooden loading pallet, and some empty boxes. However, agents also discovered a small amount of green wrapping material that appeared to be the same as that used to wrap some of the marijuana found in Owen's truck, and a single bud of marijuana inside one of the boxes.

At their joint trial, all three defendants exercised their right not to testify. Owen's defense was that he had been duped into transporting the marijuana by either Samuels or Baroody, or both. Counsel for Baroody and Samuels presented identical theories; a finger-pointing triangle ensued.

The jury convicted Owen, Samuels and Baroody on both counts. Prior to sentencing, Owen and Samuels separately sought the benefit of the safety valve provision in 18 U.S.C. §

3553(f). That provision requires the defendant to give the Government a truthful account of his participation in the crimes for which he is convicted, in exchange for a sentence in line with the United States Sentencing Guidelines rather than the mandatory minimum sentence imposed by 21 U.S.C. §§ 841 and 846.

In his safety valve proffer, Owen maintained his innocence. Owen explained that he performed moving jobs for people part-time and that he was approached by Samuels, whom he had known since high school, to move some items to Florida for Susan Thomas. Owen claimed that he believed that the moving job was legitimate, and that at no point did he suspect he was engaged in unlawful activity. Samuels admitted in his proffer that he smelled marijuana when the boxes were being loaded into the truck, but maintained that he had nothing to do with a conspiracy to distribute marijuana. Samuels also stated that he did not mention that he smelled marijuana to either Owen or Baroody. The district court denied their applications. Owen was sentenced to the mandatory minimum imposed by the statute. At Samuels' sentencing hearing, prior to receiving his sentence, Samuels made the following statement:

> I know Mr. Owen for a long time. Your Honor, I hired him for a job, and that's about it. He didn't know anything about drugs. Mr. Owen has been a good friend and good brother to me, your Honor. Maybe I was wrong not to take the stand – maybe he was wrong not to take the stand, but he didn't have anything to do with it, your Honor. I told the prosecutor that when I went in. I told him Mr. Owen was innocent when I first went in, when I did my proffer agreement. I told him Mr. Owen didn't have anything to do with it.

*United States v. Owen*, No. 04-649-cr, 2006 WL 288361, at *2, 2006 U.S. Dist. LEXIS 7765, at *4 (S.D.N.Y. Feb. 3, 2006).

Owen moved *pro se* for a new trial pursuant to Rule 33, asserting that Samuels' statement constituted newly discovered exculpatory evidence. In granting the motion, the district court observed,

> there is no evidence that Owen knew the entire contents of Samuels' statement before Samuels made it at the sentencing hearing. . . . [A]t all times Samuels was maintaining his innocence and had a right to exercise his Fifth Amendment privilege to remain silent at trial. There is no evidence that Owen had knowledge that Samuels was willing to relinquish that right at any time. Owen could not have forced Samuels to provide that testimony at or prior to trial. Therefore, defense counsel could not have discovered the evidence that Samuels would provide with due diligence before or during trial.

*Id.* at *3, 2006 U.S. Dist. LEXIS 7765, at *7-8. The district court also found that Samuels' statements corroborated Owen's testimony at the safety valve hearing that Owen did not know, nor had reason to suspect, that the truck he was driving contained marijuana. "Samuels' statements therefore go to the heart of the circumstantial evidence against Owen and . . . may be characterized as new evidence that is 'material' and non-cumulative." *Id.*, 2006 U.S. Dist. LEXIS 7765, at *8-9. Finally, the district court noted that Samuels' "voluntary and unsolicited" statements were made prior to sentencing – "and thus were not made at a time when he had nothing to lose." *Id.* at *4, 2006 U.S. Dist. LEXIS 7765, at *10. The district court concluded that the statements were therefore "sufficiently credible as newly discovered evidence to warrant a new trial for Owen," *id.*, and granted Owen's motion.

The Government appealed.

## DISCUSSION

We review the district court's decision to grant a new trial for abuse of discretion. *See*

*United States v. Robinson*, 430 F.3d 537, 542 (2d Cir. 2005); *United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) (internal quotation marks omitted).

A new trial pursuant to Rule 33 based on newly discovered evidence may be granted "only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that admission of the evidence would probably lead to an acquittal." *United States v. Alessi*, 638 F.2d 466, 479 (2d Cir. 1980); *see also United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005); *United States v. Zagari*, 111 F.3d 307, 322 (2d Cir. 1997). Our sister circuits are in substantial agreement on the essential elements to be considered in evaluating a defendant's motion for a new trial pursuant to Rule 33, and a majority has articulated a nearly uniform test. Each essentially requires that: (1) the evidence be newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal. *See e.g.*, *United States v. Jasin*, 280 F.3d 355, 361 (3d Cir. 2002); *United States v. Metz*, 652 F.2d 478, 479 (5th Cir. 1981); *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994); *United States v. Theodosopoulos*, 48 F.3d 1438, 1448 (7th Cir. 1995); *United States v.*

*Gustafson*, 728 F.2d 1078, 1084 (8th Cir. 1984); *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992); *United States v. DiBernardo*, 880 F.2d 1216, 1224 (11th Cir. 1989).

Applying this test, a decided majority of circuits have held that, when a defendant is aware that his codefendant could provide exculpatory testimony but is unable to obtain that testimony because the codefendant invokes his privilege against self-incrimination prior to and during trial, the codefendant's postconviction statement exculpating the defendant is not "newly discovered evidence" within the meaning of Rule 33. *See, e.g.*, *Jasin*, 280 F.3d at 368 (Third Circuit); *Metz*, 652 F.2d at 480 (Fifth Circuit); *Glover*, 21 F.3d at 138 (Sixth Circuit); *Theodosopoulos*, 48 F.3d at 1448 (Seventh Circuit); *Reyes-Alvarado*, 963 F.2d at 1188 (Ninth Circuit); *United States v. Muldrow*, 19 F.3d 1332, 1339 (10th Cir. 1994); *DiBernardo*, 880 F.2d at 1224 (Eleventh Circuit).

The First Circuit has taken a more expansive view of Rule 33. In *United States v. Montilla-Rivera*, the First Circuit noted that "[m]ost other circuits have expressed hostility to th[e] notion" that "exculpatory affidavits from codefendants who did not testify at trial because they exercised their Fifth Amendment privileges may . . . qualify as 'newly discovered' evidence within the meaning of Rule 33." 115 F.3d 1060, 1065 (1st Cir. 1997). The court explained that the reluctance of the other circuits to permit a new trial on the basis of such evidence was usually grounded in the fact that, even though the testimony was unavailable due to assertions of constitutional privilege, the defendant was at least *aware of* the possible testimony at trial, and, therefore, it was not "newly discovered" after trial when the codefendants, since convicted and sentenced, asserted their willingness to testify. *Id.* at 1065-66 (citations omitted). Relying on

circuit precedent, the court rejected the majority view. "This circuit has, for almost twenty years, held that the 'newly discovered' language of Rule 33 encompasses evidence that was 'unavailable.'" *Id.* at 1066 (citing *Vega Pelegrina v. United States*, 601 F.2d 18, 21 (1st Cir. 1979)). The court stated that, "given the '[i]n the interests of justice' standard of [Rule 33], there seems little distinction between evidence which a defendant could not present because he did not know of it and evidence which he could not present because the witness was unavailable despite exercising due diligence."[2] *Id.* (first alternation in original). Accordingly, the first prong of the

[2] The First Circuit also noted that, "in the context of newly available evidence from one not a codefendant, at least two circuits appear to agree" that "newly available" is synonymous with "newly discovered" in the Rule 33 context. *Montilla*, 115 F.3d at 1066. One of the cases cited is *United States v. Ouimette*, 798 F.2d 47, 51-52 (2d Cir. 1986). This case does not support the proposition for which it was cited.

In *Ouimette*, an eyewitness informed defense counsel that he could exculpate defendant Ouimette. *Id.* at 51. "Two weeks later," in "a detailed signed statement to the Providence police," the witness "assert[ed] that he had met [Ouimette] in prison . . . , that [Ouimette] had promised him $1,000 to testify falsely that he had witnessed the [incident in question], and that the two of them had carefully rehearsed the exculpatory story [the witness] was to tell." *Id.* Prosecutors turned this statement over to defense counsel, and, thus, the witness was not called to testify in Ouimette's defense. *Id.*

After his conviction, Ouimette moved for a new trial, relying upon a new sworn statement by the same witness. *Id.* "In addition to reiterating much of Williams' original version concerning the incident . . . , the statement alleged that the Providence police had learned . . . of [the witness's] plan to testify in Ouimette's defense and had subsequently staged a successful campaign of intimidation to prevent him from testifying." *Id.*

As the court noted, "[o]n appeal, Ouimette ma[de] clear that the newly discovered evidence he claim[ed] warrant[ed] a new trial [was] not merely [the witness's] version of the incident . . . , but also 'the revelation that [the witness] was functionally rendered unavailable to the defense due to the threatening remarks and activities of the Providence Police Department.'" *Id.* Central to our decision to remand the case for further hearings on the new trial motion was the fact that the assertion of police misconduct was "discovered" after trial, and it supported the implication of Ouimette's defense strategy "that the police, apparently out of personal animus

First Circuit's Rule 33 test is broader than that of the other circuits, requiring that "the evidence was unknown *or unavailable* to the defendant at [the] time of trial." *Id.* (internal quotation marks omitted); *see also United States v. Moldonado-Rivera*, 489 F.3d 60, 66 (1st Cir. 2007) (citing *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980)).

We have never before held that a new trial may be granted pursuant to Rule 33 on the basis of evidence that was known by the defendant prior to trial, but became newly available after trial, and we decline to do so here. As Judge Friendly observed, albeit in *dicta*, courts "must exercise great caution in considering evidence to be 'newly discovered' when it existed all along and was unavail[a]ble only because a co-defendant, since convicted, had availed himself of his privilege not to testify." *United States v. Jacobs*, 475 F.2d 270, 286 n.33 (2d Cir. 1973). Following this counsel, we now join the majority of circuits to have addressed the issue and hold that Rule 33 does not authorize district courts to grant new trials on the basis of such evidence since it is not newly discovered, but merely newly available.

It is axiomatic that where the words of a statute are clear, "the words employed are to be

against [Ouimette]," planted evidence "and falsely represented " what they had seen. *Id.* We stated that the "newly discovered" evidence was the witness's testimony about police intimidation; we *explicitly* noted that the witness's post-trial willingness to testify truthfully about what he saw was *not* new evidence, as defense counsel was informed of that testimony weeks before trial. *Id.*

Thus, contrary to the First Circuit's suggestion, *Ouimette* does not support the proposition that testimony the defendant was aware of prior to or during trial, but only became available after trial, is newly discovered evidence within the meaning of Rule 33. *Id. Ouimette* clearly indicates the opposite. *Id.* ("The Government is correct that [the witness's] proposed testimony regarding the events . . . is not new, since [the witness] told [Ouimette]'s counsel a similar story three weeks before the trial.").

taken as the final expression of the meaning intended." *United States v. Missouri Pac. R.R. Co.*, 278 U.S. 269, 278 (1929); *see Business Guides, Inc. v. Chromatic Commc'ns Enters. Inc.*, 498 U.S. 533, 540-41 (1991) ("As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous."); *Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120, 123 (1989); *In re Chalasani*, 92 F.3d 1300, 1312 (2d Cir. 1996). One does not "discover" evidence after trial that one was *aware of* prior to trial. To hold otherwise stretches the meaning of the word "discover" beyond its common understanding. *See Webster's Third New Int'l Dictionary* 647 (2002) (defining "discover" as "to make known (something secret, hidden, unknown, or previously unnoticed)"). We are not inclined to expand the scope of Rule 33 beyond its textual limits. *See Jasin*, 280 F.3d at 368 (noting that rule that codefendant's testimony known to defendant at trial cannot be newly discovered "is anchored in the plain meaning of the text of Rule 33. . . . The unambiguous language of Rule 33 . . . contemplates granting of a new trial on the ground of 'newly discovered evidence' but says nothing about newly available evidence"); *see also Dodd v. United States*, 545 U.S. 353, 359 (2005) ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." (alteration in original) (internal quotation marks omitted)); *Tyler v. Cain*, 533 U.S. 656, 663 n.5 (2001) ("[Courts] do not have license to question [legislative] decision[s] on policy grounds.").

We also reject Owen's argument that, in determining whether exculpatory statements by codefendants constitute newly discovered evidence, courts should distinguish between pre- and postsentence exculpatory statements. In urging this point, Owen asserts that, "[c]ontrary to the

Government's claim, there is uniformity among the Circuits as to whether a statement made *before sentencing* exculpating a co-defendant can form the basis of a Rule 33 motion." Owen Br. at 11 (citation omitted). Owen greatly exaggerates the case law. It is true that in most of the cases where the circuit courts have held that post-trial exculpatory statements by codefendants do not constitute newly discovered evidence, the statement at issue occurred after the defendant was sentenced. But not a single circuit has indicated that a presentence statement could be considered newly discovered because it is more reliable. Owen nevertheless argues that unlike postsentence statements, which are made at a time when the codefendant has nothing to lose, presentence statements are "inherently trustworthy because an un-sentenced co-defendant who attempts to exculpate his confederates exposes himself to a more severe punishment" by shifting the blame for the crime from the defendant to himself. *Id.* at 12. Our holding that previously known, but newly available, evidence is not newly discovered within the meaning of Rule 33 is rooted in the plain meaning of the Rule's text. If a codefendant's testimony is not in fact "newly discovered," the timing of its delivery is irrelevant. Whether such testimony is offered pre- or postsentence, it may not serve as the basis for granting a new trial.[3]

Moreover, contrary to Owen's assertion, presentence statements are not "inherently trustworthy" because the defendant necessarily exposes himself to enhanced liability. In his attempt to exculpate Owen, Samuels managed to avoid saying anything incriminating about himself. He stated that Owen was innocent, but in no sense did he assume the blame "once

[3] We do not suggest that the pre/postsentence distinction is always irrelevant to the Rule 33 analysis. The reliability or trustworthiness of evidence is something that may be considered under other elements in light of the totality of the circumstances in a particular case.

shouldered by [Owen]." *Id.* Thus, despite the fact that Samuels delivered his statement prior to receiving his sentence, given that the substance of his statement was not in any way against his penal interest, Samuels' testimony is no more trustworthy than the statement of an already-sentenced codefendant.

In holding today that "newly discovered" does not mean "newly available," it should be noted that we do not preclude the possibility that a codefendant's post-trial exculpatory statements may ever qualify as newly discovered evidence within the meaning of Rule 33. There may be cases where a codefendant's post-trial testimony does indeed constitute newly discovered evidence. But where, as in this case, a defendant knew or should have known, that his codefendant could offer material testimony as to the defendant's role in the charged crime, the defendant cannot claim that he "discovered" that evidence only after trial.

Owen claims that prior to Samuels' sentencing hearing Owen "was unaware of Mr. Samuels' ability to exculpate him." *Id.* at 15. This cannot be true. Owen was clearly aware of what he did and did not speak with Samuels and Baroody on the days in question. If, as Owen claims, he did not discuss with Samuels or Baroody a plan to ship marijuana to Florida, he would have known prior to trial that both Samuels and Baroody could have attested to this fact. Owen was at all times aware of Samuels' "ability" to exculpate him, but was unable to benefit from Samuels' testimony because Samuels did not make it available until after the trial was over. In these circumstances, Samuels' testimony is not newly discovered evidence within the meaning of

Rule 33.[4]

When a codefendant invokes his privilege against self-incrimination and refuses to testify, the defendant is denied the benefit of any potentially exculpatory testimony the codefendant might have provided. This is one consequence of the Fifth Amendment privilege. But it is not without remedy. If a codefendant's assertion of privilege deprives the defendant of exculpatory testimony, the district court may grant a severance if it is persuaded that the deprivation causes the defendant prejudice.[5] *See* Fed. R. Crim. P. 14(a); *United States v. Wilson*,

[4] At his sentencing hearing, Samuels claimed that during his initial proffer session he told the Government that Owen was innocent and did not have anything to do with the conspiracy. Our request for supplemental briefing regarding whether Samuels did in fact exculpate Owen at the proffer session reveals sharp factual disputes. These do not, however, impede our resolution of this appeal. The questions of (1) whether Samuels exculpated Owen at the proffer session, and (2) if so, whether the government failed to turn that information over to Owen, are irrelevant to the issue of whether Samuels' post-trial exculpation of Owen is newly discovered evidence within the meaning of Rule 33. As discussed above, if Owen was not a part of the alleged conspiracy he would have been aware at all times of Samuels' ability to exculpate him, since he knew whether Samuels or Baroody informed him that the boxes contained marijuana. Owen did not need to know that Samuels had indicated that Owen was innocent to realize that Samuels could exculpate him.

In his supplemental brief, Owen asserts that the Government's alleged failure to inform Owen that Samuels exculpated him at the proffer session might also have violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). We express no opinion as to the merits of that claim as it is irrelevant to the issue at hand. We do not, however, preclude the parties from pursuing the matter, which, as noted, is factually disputed, on remand to the district court.

[5] Despite being aware of Samuels' ability to exculpate him, Owen did not make a motion to sever his trial from his codefendants', nor did he make any other effort to procure Samuels' testimony. Although we do not view this as a lack of diligence by Owen in discovering Samuels' ability to provide material evidence – the substance of Samuels' testimony was known to Owen from the day he met Samuels at the Bronx warehouse and took possession of the drugs – it does manifest a lack of diligence in procuring the admission of Samuels' testimony. Of course, because Samuels' testimony is not newly discovered within the meaning of Rule 33, even if Owen *had* exerted diligent efforts to procure Samuels' testimony, we still would have found that

11 F.3d 346, 354 (2d Cir. 1993) ("In deciding whether to grant severance based on the defendant's need to call a co-defendant, a district court should consider (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the counter arguments of judicial economy; and (4) the likelihood that the testimony would be subject to substantial, damaging impeachment." (internal quotation marks omitted)). In the severed trial, the prosecutor may confer limited immunity on the codefendant so that he may testify truthfully without concern of self-incrimination, *see United States v. Ebbers*, 458 F.3d 110, 118-19 (2d Cir. 2006) (discussing prosecutorial discretion to grant use immunity to defense witnesses who invoke right against self-incrimination), or the court may postpone the defendant's trial until after the codefendant's trial is completed, Fed. R. Crim. P. 14(a) ("[T]he court may . . . sever the defendants' trials, *or provide any other relief that justice requires*." (emphasis added)). Defendants sometimes will fail to persuade the court that prejudice will result if they are deprived of their codefendant's testimony, particularly when the court is not convinced that what the codefendant has to say is reliable. In that situation, the defendant's remaining option is to take the stand and convey to the jury himself any facts – including dealings with codefendants – that would support a not guilty verdict.[6] But when a defendant knew or should have known that

the grant of a new trial was error. But we note that even the First Circuit will not afford a new trial to a defendant who has made no effort to secure the admission of the purportedly unavailable evidence. *See United States v. Hernandez-Rodriguez*, 443 F.3d 138, 144 (1st Cir. 2006).

[6] We do not mean to imply that Owen could have explained to the jury what testimony Samuels would have offered if Samuels had taken the stand. Rather, Owen could have testified

his codefendant could offer material testimony as to the defendant's role in the charged crime, his inability to procure that testimony before or during trial should not be redressed by granting the defendant a new trial when the codefendant asserts his willingness to exculpate the defendant after the original trial is over.

**CONCLUSION**

Because Samuels' statements were not newly discovered evidence within the meaning of Rule 33, the district court abused its discretion in granting Owen's Rule 33 motion. We therefore REVERSE the district court's decision granting Owen a new trial.

---

about his conversations with Samuels and Baroody and the extent of his knowledge of the marijuana shipment. A defendant may not comment on his codefendant's refusal to take the stand. To do so would violate the codefendant's rights under the Fifth Amendment. *See United States v. Caci*, 401 F.2d 664, 672 (2d Cir. 1968), *vacated on other grounds by Giordano v. United States*, 394 U.S. 310 (1969); *United States v. Echeles*, 352 F.2d 892, 898 (7th Cir. 1965) ("[Defendant] could not properly call [his codefendant] as a witness during [the defendant's] case in chief. For if [the codefendant] declined to take the stand, as was his right, [defendant's] action in calling him and forcing him to decline to do so in front of the jury would have injected prejudicial error into the record as to [the codefendant].").