# Order

Michigan Supreme Court
Lansing, Michigan

December 11, 2020

160398 & (19)

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
        Plaintiff-Appellee,

v

KENNETH DUANE MILTON,
        Defendant-Appellant.

SC: 160398
COA: 349777
Wayne CC: 85-001537-FC

_____/

By order of March 18, 2020, the prosecuting attorney was directed to answer the application for leave to appeal the September 10, 2019 order of the Court of Appeals. On order of the Court, the answer having been received, the application for leave to appeal is again considered. Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we VACATE the February 14, 2019 order of the Wayne Circuit Court, and we REMAND this case to that court for reconsideration of the defendant's motion for relief from judgment in light of *Brady v Maryland*, 373 US 83 (1963), and *People v Johnson*, 502 Mich 541 (2018). The trial court erred by failing to address the defendant's claim that the prosecution violated *Brady* by failing to disclose an exculpatory statement made to the police. The trial court also erred by making credibility determinations and failing to conduct the proper credibility analysis under *Johnson*. As this Court stated in *Johnson*, "a trial court's credibility determination is concerned with whether a *reasonable juror* could find the testimony credible on retrial." *Id*. at 567 (emphasis in original). On remand, the trial court shall address the defendant's *Brady* claim and undertake the appropriate analysis of the proffered new evidence under *People v Cress*, 468 Mich 678 (2003), and *People v Johnson*. The motion to remand for evidentiary hearing is DENIED.

We do not retain jurisdiction.

MCCORMACK, C.J. (*concurring*).

I agree that reconsideration is warranted in this case. I do not believe that the Court is second-guessing a reasonable decision to deny a motion for relief from judgment. And rather than departing from its decision in *People v Johnson*, 502 Mich 541 (2018), the Court is merely applying it.[1]

---

[1] Whether the *Johnson* two-part credibility test applies when analyzing a defendant's motion without the benefit of holding an evidentiary hearing remains an open question. See *People v Hammock*, ___ Mich ___, ___; 946 NW2d 546, 550 (2020) (CAVANAGH, J., concurring). For our purposes, however, I will assume that it does.

The defendant was convicted in 1985 of a murder committed during a robbery that he claimed was actually committed by "Taxi Tony" and Jerry Littlejohn. After exhausting his direct appeals and unsuccessfully filing his first motion for relief from judgment, the defendant obtained affidavits from two witnesses who claimed that Taxi Tony and Littlejohn committed the robbery and murder and that the prosecution's key witness was bribed to frame the defendant.

One witness, Steven Jackson, averred that he was riding in a car with Taxi Tony, Littlejohn, and Joe Johnson when they committed the murder. He further swore that he went to the police station the next day to make a statement about what he had witnessed. The other witness, Althon Vann, swore that he was present when Taxi Tony and Littlejohn planned a robbery. Later, when Vann found himself sharing a holding cell with Littlejohn in the county jail, Littlejohn told him that he had shot the doorman during the robbery. Vann further averred that Littlejohn told him that Taxi Tony was going to pay off the only witness who could identify him and that he was going to pin the shooting on the defendant to eliminate him as a drug competitor.

Based on these affidavits and his own affidavit, the defendant brought this successive motion for relief from judgment.[2] He claimed that the prosecution violated *Brady v Maryland*, 373 US 83 (1963), by failing to disclose Jackson's exculpatory police statement. He also raised a new-evidence claim under *People v Cress*, 468 Mich 678 (2003). The trial court denied the motion without holding an evidentiary hearing. In doing so, the trial court made three clear errors that warrant reconsideration of its decision.

First, the trial court erred when it neglected to analyze the defendant's *Brady* claim. Though *Brady* claims and *Cress* claims are often intertwined,[3] trial courts must address each claim separately. See MCR 6.504(B)(2) (an order denying a motion for relief from judgment without holding further proceedings "must include a concise statement of the reasons for the denial"). Here, the trial court's opinion focused entirely on the defendant's *Cress* claim.

---

[2] Because his motion is based on newly discovered eyewitnesses, the defendant has satisfied the requirements of MCR 6.502(G)(2) (a defendant may file a successive motion for relief from judgment if it is based on a claim of new evidence that was not discovered before the first motion was filed).

[3] A defendant may claim, for example, that an eyewitness' account is *Brady* evidence because it was allegedly known to the police and was not disclosed to the defense. But if the record does not support a finding that this evidence was in the government's possession before trial, that same evidence may support an alternatively-pled *Cress* claim because it was newly-discovered.

Second, I believe the trial court erred when it dismissed Jackson's and Vann's affidavits because they contained hearsay statements. In my view, the most pivotal parts of the affidavits—the identifications of Jerry Littlejohn as the shooter—would be admissible as hearsay exceptions. Littlejohn's alleged admission to Vann that he shot the victim would be a statement against penal interest admissible under MRE 804(b)(3). And Johnson's alleged statement to Jackson immediately after the shooting—that "Jerry shot Roger"—would be admissible either as a statement against penal interest (because Johnson would be liable for felony murder as an aider and abettor in the home invasion) or as an excited utterance under MRE 803(2).

Finally, I agree that the trial court's *Cress* analysis failed to apply the proper credibility test. In *Johnson*, this Court laid out a two-step process for analyzing the credibility of new eyewitnesses. First, the court must decide if the witness is "patently incredible," such that *no* reasonable juror would "entertain a reasonable belief in the witness's veracity." *Johnson*, 502 Mich at 568. If that is the case, the court should deny the motion. *Id*. But if a witness is not patently incredible, the court must decide whether the newly discovered evidence makes a different result probable on retrial, "bear[ing] in mind what a reasonable juror might make of the testimony, and not what the trial court itself might decide, were it the ultimate fact-finder." *Id*. Here, the trial court did not apply *Johnson* and instead appeared to make its own credibility determinations about the proffered witnesses. As we made clear in *Johnson*, "a trial court's credibility determination is concerned with whether a *reasonable juror* could find the testimony credible on retrial."[4] *Id*. at 567. In failing to correctly apply *Johnson*, the trial court abused its discretion. See *People v Duncan*, 494 Mich 713, 723 (2013) ("A trial court necessarily abuses its discretion when it makes an error of law.").

In conducting its analysis of the proffered witnesses on reconsideration, the trial court must "consider all relevant factors tending to either bolster or diminish the veracity of the witness's testimony." *Johnson*, 502 Mich at 567. Here, there are reasons to be skeptical of the witnesses' accounts, as detailed by my dissenting colleagues. But there

---

[4] Justice ZAHRA questions whether *Johnson* held that if a single hypothetical rational juror would vote to acquit on retrial, a new trial must be granted. It did not. Though I believe the question of what a "different result" means is worthy of our consideration, it was not at issue in *Johnson*. Nor is it presented in this case. Rather, *Johnson* instructed that the trial court's role is as a gatekeeper, rather than the ultimate fact-finder, when evaluating motions for relief from judgment. See *Johnson*, 502 Mich at 568. Instead of deciding for itself whether the new witnesses are credible, a trial court is to ask whether a reasonable juror could believe their testimony. If so, the court must weigh the proffered witnesses' accounts in determining whether the newly discovered evidence makes a different result probable on retrial.

are also reasons to think that the affiants might be telling the truth. According to the Offender Tracking Information System (OTIS) maintained by the Michigan Department of Corrections, Jackson was 12 years old at the time of the shooting, which would explain his account of being taken to the police station by his mother the next day to report what he allegedly saw. OTIS also shows that Vann committed a larceny on February 11, 1985—about two weeks before the murder in this case took place. This tends to support Vann's account of being placed in the same holding cell (presumably having been picked up on the larceny charge) with Littlejohn, who we know was arrested at some point in relation to this murder. Nor does it appear that either Jackson or Vann has nothing to lose by signing a false affidavit; Jackson's earliest release date is in 2023 and Vann's is in 2026. Moreover, the prosecution's sole eyewitness to the murder, Edith Gibson, admitted at trial that she told a police officer that Taxi Tony had set up the robbery and that he had a friend named Jerry. Gibson also identified Joe Johnson as having been one of the perpetrators of the crime. Two other witnesses, who could not be located to testify, also told the police that Taxi Tony's brother "Jerry" was the shooter. Finally, the defendant denied any involvement in the crime and presented an alibi defense at trial.

These facts are, in my view, worthy of further exploration at an evidentiary hearing. The decision whether to hold an evidentiary hearing is for the trial court to make. See MCR 6.504(B)(2) (a trial court may deny a motion for relief from judgment without holding an evidentiary hearing if it "plainly appears from the face of the materials described in subrule (B)(1) that the defendant is not entitled to relief"). But it is a decision that must be made on the particular facts of the case and with careful consideration of the strengths and weaknesses of the prosecution's original case compared to the strengths and weaknesses of the defendant's proffered evidence. At an evidentiary hearing, the trial court would have the opportunity to judge Vann's and Jackson's demeanor and to see how they withstand cross-examination. There are credibility issues at stake here to be sure; but I believe that these issues deserve to be fleshed out through the truth-revealing process of an evidentiary hearing.

ZAHRA, J. (*dissenting*).

I respectfully dissent from the order remanding this case to the trial court for reconsideration of the defendant's motion for relief from judgment in light of *Brady v Maryland*[5] and *People v Johnson*.[6] This is yet another case in which this Court has second-guessed a trial court's patently reasonable decision to deny a pro se defendant's successive motion for relief from judgment that is supported only by affidavits of highly questionable veracity submitted by fellow prisoners.[7] Like Justice MARKMAN, I do not

_____

[5] *Brady v Maryland*, 373 US 83 (1963).

[6] *People v Johnson*, 502 Mich 541 (2018).

[7] See *People v Hammock*, ___ Mich ___, ___; 946 NW2d 546, 544-555 (2020)

"quarrel with the idea that this Court should view 'actual innocence' claims in a receptive manner where a substantial question as to a defendant's innocence has been raised . . . ."[8] This Court, however, is departing from the very standard espoused in *Johnson*: " 'The trial court has the right to determine the credibility of newly discovered evidence for which a new trial is asked, and if the court is satisfied that, on a new trial, such testimony would not be worthy of belief by the jury, the motion should be denied.' "[9] Further, "[i]t is well settled that the matter of granting a new trial on after-discovered evidence *rests in the sound judicial discretion of the trial court, and an order refusing a new trial on that ground will not be disturbed on appeal, in the absence of a plain abuse of discretion. And it is equally well settled that an application for new trial based upon that ground is not regarded with favor and will be granted with great caution.*"[10] The recent decisions of this Court cited above, and particularly the decision in the instant case, demonstrate the very absence of caution or meaningful deference to the trial court's decision. In doing so, the Court continues to signal

> that trial courts must hold evidentiary hearings on almost every occasion on which a defendant submits new evidence in the form of an affidavit signed by a fellow prisoner. And if that is the message we intend, I fear that such lowering of the bar in support of new evidentiary hearings—perhaps many years after the commission of the offense and the presentation at trial of the evidence—is not only incompatible with the Court's new rules and incompatible with our traditional standards of appellate review of the trial courts, but, most grievously, risks burying potentially meritorious claims of innocence among claims based on far-fetched, incredible, and uncorroborated prisoner affidavits.[11]

I would deny defendant any relief in this matter and respect the threshold determination made by the trial court that the affidavits offered in this case fail to present a material and credible question of defendant's actual innocence that is worthy of further review.

Some 35 years ago, defendant and Joseph Johnson were tried for the robbery and fatal shooting of a drug dealer named Roger Cottingham. The primary prosecution witness, Edith Marie Gibson, testified that she observed defendant and Joseph Johnson

---

(MARKMAN, J., dissenting), and cases cited therein.

[8] *Id*. at ___; 946 NW2d at 554.

[9] *Johnson*, 502 Mich at 567, quoting *Connelly v United States*, 271 F2d 333, 335 (CA 8, 1959) (emphasis omitted).

[10] *Connelly*, 271 F2d at 334 (quotation marks and citations omitted; emphasis added).

[11] *Hammock*, ___ Mich at ___; 946 NW2d at 554-555 (MARKMAN, J., dissenting).

commit the crime and that defendant was the shooter. Gibson admitted on cross-examination that she told police that "Taxi Tony," whose real name is William Anthony Garrett, set up the robbery. Sergeant Elmer Harris, the officer in charge of the investigation, testified that Garrett admitted to driving defendant and Johnson to the scene to collect one of his drug debts. A separate record was made outside the jury's presence, during which Garrett testified. He refused to provide his nickname or testify as to whether he was at the shooting scene on the day of the shooting on the grounds that it might incriminate him. There was also reference to a pretrial hearing in defendant's case in which a person named "Littlejohn" was identified as having been arrested in conjunction with this crime. This is significant because defendant's instant motion for relief from judgment asserts that a "Jerry Littleton" was actually the shooter, and defendant supports his claim in part with an affidavit from a fellow prisoner, Althon Vann, who avers that he and Jerry Littleton were incarcerated together shortly after the shooting. But there is no evidence that Littleton was actually charged or incarcerated in relation to these crimes or, if he was incarcerated, whether he was incarcerated during the same period as Vann.

After deliberating for a mere 90 minutes, the jury convicted defendant of first-degree felony murder and possessing a firearm during the commission of a felony (felony-firearm). Defendant was sentenced to nonparolable life imprisonment for the murder conviction and a consecutive two-year sentence for the felony-firearm conviction. Johnson was convicted of second-degree murder in a bench trial and was sentenced to life imprisonment. Johnson testified at his trial that he was sent to the address to collect a debt from Gibson's then boyfriend, Leroy Gigger (now deceased), who owed Taxi Tony money. Johnson claimed that he was unaware that defendant was armed with a gun.

Defendant filed a direct appeal arguing that the trial court erred by not responding to a jury question about what would happen if jurors were unable to reach a verdict and that the prosecutor violated his discovery obligation by failing to disclose leniency offered to Gibson (on a pending drug conviction) in exchange for her testimony. The Court of Appeals granted defendant's motion to remand, limited to the prosecutor's alleged discovery violation.[12] On remand, the trial court denied a new trial after conducting two evidentiary hearings. The Court of Appeals affirmed,[13] and this Court denied leave to appeal.[14]

---

[12] *People v Milton*, unpublished order of the Court of Appeals, issued August 13, 1986 (Docket No. 89639).

[13] *People v Milton*, unpublished per curiam opinion of the Court of Appeals, issued August 26, 1988 (Docket No. 89639).

[14] *People v Milton*, 434 Mich 894 (1990).

In 2004, defendant filed his first motion for relief from judgment. He claimed that the jury instructions failed to convey the requisite intent for felony-murder, the prosecutor failed to produce res gestae witnesses, and defense counsel failed to communicate a plea offer. The trial court denied the motion. The Court of Appeals denied leave to appeal under MCR 6.508(D),[15] as did this Court.[16]

Defendant, acting pro se, filed the current motion for relief from judgment in 2018 on the basis of newly discovered evidence. In support of his motion, he submitted affidavits from two witnesses who claim that the actual killer is a person named Jerry Littlejohn, presumably the same "Littlejohn" earlier mentioned.

The first affiant, Steven Lamont Jackson, avers that he was in a car with Garrett, Littleton, and Johnson on the night of the shooting. Garrett apparently pulled the car into the parking lot next to a house. Littleton and Johnson got out of the car, drew guns, and went onto the porch of a home. According to Jackson, several minutes later, they came out of the house with their guns in their hands and Johnson purportedly said, "Jerry shot Roger." As Garrett drove away, Garrett asked Littlejohn and Johnson if Roger was dead and they responded that they did not know. Littleton asked what was going to happen now, but Garrett told him not to worry about it because he had something planned. Jackson averred that he told his mother what he saw and she drove him to the police station to make a statement.

The second affiant, Althon Vann, avers that sometime prior to the murder (he does not provide a date) he was at Garrett's house with Littleton talking about committing a robbery at a home on Philadelphia, the street on which the robbery and murder occurred. Garrett and Littlejohn allegedly asked Vann to join them as there would be plenty of money to go around. According to Vann, the intent was to scare off rival drug dealers in the area. Vann averred that he declined to join Garrett and Littlejohn in their scheme to confront rival dealers and did not in any way participate in the robbery. Vann then later encountered Littleton in the county jail. According the Michigan Offender Tracking Information System website, Vann had committed a larceny on February 11, 1985, for which he was convicted and then sentenced on April 15, 1985.[17] The exact date Vann was arrested for this larceny is unknown. And, as previously mentioned, other than the mention of "Littlejohn" during a pretrial hearing in defendant's case, there is no evidence

---

[15] *People v Milton*, unpublished order of the Court of Appeals, issued March 16, 2006 (Docket No. 263771).

[16] *People v Milton*, 477 Mich 907 (2006).

[17] Michigan Department of Corrections, *Michigan Offender Tracking Information System*, <https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=145300> (accessed November 2, 2020).

to support the conclusion that someone named Littlejohn was being held in the county jail at this timeframe.

Vann avers that while in jail, Littleton told Vann that he was lucky he did not come with them to the robbery because things got bad and a guy got killed. Specifically, Vann claims that Littleton admitted to shooting a doorman in the head. Vann purportedly asked if Littleton had a chance of beating the charge. Littleton told him that Garrett was going to pay off the only witness who could identify him and "Joe" as the shooters. Vann specifically averred that Littleton stated he was going to give the witness 10 bundles of heroin and $2,500 dollars in cash and that defendant would be framed for the murder.

In addressing the instant motion for relief from judgment, the trial court specifically mentioned that defendant had presented two claims. "First, defendant requests an evidentiary hearing alleging new evidence, which defendant alleges was suppressed by the police," i.e., a *Brady* claim. "Second, defendant claims this new evidence which was not uncovered during his trial was in-direct [sic] violation of his state and federal rights." The Court's order remanding this case states that "[t]he trial court erred by failing to address the defendant's claim that the prosecution violated *Brady* by failing to disclose an exculpatory statement made to the police." This simply is not true. The trial court specifically addressed Jackson's claim that his mother took him to the police department where he gave a statement regarding the robbery and murder. In rejecting this claim, the trial court observed that "defendant has not presented a copy of this statement in support of his allegation of its existence." The trial court did not end its analysis at that point, but noted further that Jackson's "affidavit is riddled with hearsay statements," as Jackson did not personally witness the robbery and murder, and that "the affidavit contains no dates as to when he was dropped off near the location of the robbery and shooting, dates for any conversation that took place, or [dates for] when he came into contact with [Garrett] or [Littleton]." In sum, the trial court rejected Jackson's affidavit, which was the basis of defendant's *Brady* claim. Obviously, the trial court could have been more thorough. Nonetheless, a cursory viewing of the affidavit reveals its incredibility. On these facts, I am unconvinced that the trial court abused its discretion by finding no reason to conduct an evidentiary hearing to explore defendant's putative *Brady* violation.

Jackson is currently 47 years old and serving 7- to 22-year sentences for third-degree criminal sexual conduct involving a victim between 13 and 15 years of age. He also served nearly 10 years for an armed-robbery conviction. Given Jackson's age, he would have been 12 years old at the time of the murder. It is dubious that a drug dealer would associate with a 12-year-old, let alone gratuitously take that 12-year-old to a location where he intended to commit an armed robbery. But even conceding such events could happen, there is a serious factual flaw in Jackson's affidavit. Jackson contends Garrett drove him home after the murder, where he got in trouble with his mother for getting home late, stating, "I didn't get home until around *7:05-7:15*, and my

Mother was pissed at me for being more than an hour late[.]"[18]  The murder, however, did not occur before 10:24 p.m., well beyond three hours after Jackson attests Garrett dropped him off at home.  Thus, under Jackson's own version of events, he could not have been in Garrett's car when Cottingham was killed.  Further, no evidence has been previously presented during any of these proceedings that mentions Jackson, and I would surmise the same is true for Johnson's case.

Althon Vann's affidavit also suffers from factual contradictions.  Vann is 61 years old and serving 27 to 42 years in prison for assault with intent to commit murder and felony-firearm.  He also has previous theft convictions.  He provides a version of events inconsistent with critical aspects of defendant's version of events at trial.  Whereas defendant contended that Garrett killed Cottingham in the course of collecting a debt for drug purchases, Vann's affidavit discusses Garrett killing a "doorman" while intimidating rival drug dealers.  Thus, it is not apparent how Vann's version of events conforms at all to the facts of the case.

Finally, while I have mentioned that defendant, Jackson, and Vann are all currently incarcerated, they were in fact all incarcerated *in the very same facility* at the time these affidavits were created.  In fact, the only person who does not appear to have a criminal conviction is the very person that defendant claims was the shooter, Littleton.  What are the chances that defendant, some 33 years after the murder, would encounter not one, but two individuals in prison who happened to have contact with Garrett—the prime alternative suspect—on or before the day of the murder and that each of these individuals had conversations with Garrett in which he not only implicated Littleton as the shooter, but further suggested Garrett informed them of his plan to frame someone for the shooting.  Indeed, Vann averred that he remembered, again after some 33 years, that Garrett "was going to put the shooting on Kenneth Milton," despite no evidence that Vann even previously knew of defendant.  The trial court recognized as much, stating, "[T]his [c]ourt finds a lack of veracity as . . . these affiants provided defendant with their 'helpful' information after they themselves were incarcerated many years after the murder of the complainant took place."  I submit the trial court was well within its sound discretion to reject these affidavits under *People v Cress*[19] and *People v Johnson*.  The concurrence claims this Court "made clear in *Johnson* [that] 'a trial court's credibility determination is concerned with whether a *reasonable juror* could find the testimony credible on retrial.' "[20]  This was stated in *Johnson*, I agree, but I seriously question whether the *Johnson* Court believed it necessary to hold that a single rational juror's doubt was now sufficient to conclude that a new trial was required.  If this conclusion was integral to the Court's decision, then the Court necessarily holds that a "different

[18] Emphasis added; comma omitted.

[19] *People v Cress*, 468 Mich 678 (2003).

[20] *Ante* at 3, quoting *Johnson*, 502 Mich at 567 (emphasis in *Johnson*).

result probable on retrial" under MCR 6.508(D) includes a hung jury or mistrial instead of an acquittal.[21]

---

[21] If this is the case, the *Johnson* Court has drastically altered our time-honored standard of review, sua sponte, without the issue having ever been raised and without any briefing on this issue. Further, the holding would align our state's jurisprudence with that of a single jurisdiction which holds that "when a defendant makes a motion for a new trial based on newly discovered evidence, he has met his burden of showing that a different result is probable on retrial of the case if he has established that it is probable that *at least one* juror would have voted to find him not guilty had the new evidence been presented . . . ." 6 LaFave et al, Criminal Procedure (4th ed), § 24.11(d), pp 740-741 n 21, citing *People v Soojian*, 190 Cal App 4th 491 (2010).

Moreover, this holding is not supported by the sources relied on in *Johnson*. The only case cited by *Johnson* in relation to this lone-juror standard is *Connelly v United States*, 271 F2d 333, 335 (CA 8, 1959), which in turn relied on *Johnson v United States*, 327 US 106 (1946), for the formula to be used when testing the sufficiency of evidence warranting the granting of a new trial on the ground of newly discovered evidence. *Connelly* summarized the relevant factor as requiring that the newly discovered evidence "must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal." *Connelly*, 271 F2d at 335.

Simply put, *Connelly* does not support a lone-juror standard and in fact stated that newly discovered evidence must likely produce an *acquittal* to warrant a new trial. A lone juror cannot produce an acquittal. At most, a lone juror can produce a hung jury, which is not a different legal result. Moreover, *Connelly* has good company. See *United States v Burfoot*, 899 F3d 326, 341 (CA 4, 2018); *United States v Bell*, 761 F3d 900, 911 (CA 8, 2014). See also *United States v Owen*, 500 F3d 83, 88 (CA 2, 2007); *United States v Berry,* 624 F3d 1031, 1042 (CA 9, 2010); *United States v Brown*, 595 F3d 498, 511 (CA 3, 2010); *United States v Morrison*, 218 F Appx 933, 946 (CA 11, 2007); *United States v Pearson*, 203 F3d 1243, 1274 (CA 10, 2000); *United States v Wall*, 389 F3d 457, 467 (CA 5, 2004); *United States v Glover*, 21 F3d 133, 138 (CA 6, 1994). And while circuits may differ on the order of the factors and some circuits combine the four and fifth factors, see *United States v Sheffield*, 425 US App DC 158, 171 (2016); *United States v Ryan*, 213 F3d 347, 351 (CA 7, 2000); *United States v Wright*, 625 F2d 1017, 1019 (CA 1, 1980), all federal circuits uniformly require a showing that newly discovered evidence is likely to result in an acquittal at a retrial to provide the convicted defendant any relief from the judgment.

In sum, I conclude the trial court was well within its discretion to reject the proffered affidavits as wholly lacking in credibility. Accordingly, no evidentiary hearings are justified with regard to the claim of newly discovered evidence or the newly asserted claim of a *Brady* violation. I would deny leave and offer defendant no further relief with regard to the successive motion for relief from judgment currently before the Court.

MARKMAN, J., joins the statement of ZAHRA, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 11, 2020



Clerk

s1208